## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON

**WAYNE HAGAN,**

        **Plaintiff,**

**v.**                            **Case No. 2:14-cv-16692**

**OFFICER JARED TAYLOR, in his
individual capacity, OFFICER JASON BRAGG,
in his individual capacity,
WARDEN DAVID BALLARD and
COMMISSIONER JIM RUBENSTEIN,
each in their individual and official capacities,**

        **Defendants.**

### PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable Thomas E. Johnston, United States District Judge, and it is referred to the undersigned for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).   Pending before the court is a Motion to Dismiss filed by defendants David Ballard and Jim Rubenstein (ECF No. 18).

### PLAINTIFF'S ALLEGATIONS AND FACTUAL BACKGROUND

The plaintiff's Complaint (ECF No. 2) arises from an alleged use of chemical agents and other force against the plaintiff by defendants Taylor and Bragg on March 16, 2014.   The plaintiff further alleges that defendants Ballard and Rubenstein (hereinafter "the Supervisory Defendants") have been put on notice of the widespread use of chemical agents and other "weaponry" in an excessive manner by correctional officers at MOCC

through numerous grievances and lawsuits filed by inmates who have been subjected to this conduct, and that defendant Ballard has actually encouraged this conduct through the implementation of a policy known at the prison as "Martial Law."   The plaintiff further alleges that Ballard and Rubenstein have chosen to ignore the issue and have failed to take any action against the offending officers.

Specifically, the Complaint alleges that, on March 16, 2014, the plaintiff was housed in the one of the Quilliams segregation units at the Mount Olive Correctional Complex ("MOCC").   The Complaint further alleges that defendants Bragg and Taylor, along with Officer Blake entered the pod and came to the plaintiff's cell.   They asked the plaintiff if he was flooding his cell, and he said "no."   The plaintiff further alleges that the officers began cursing at him in an attempt to provoke him, and then went and turned off the water in the plaintiff's cell.   (ECF No. 2 at 13, ¶ 12).

The plaintiff further alleges that the defendants opened the food slot to the plaintiff's cell and told him to "cuff up."   However, the plaintiff further alleges that, when the plaintiff stuck his hands out to do so, defendant Taylor kicked the food slot shut, closing the plaintiff's hands therein.   (*Id.*, ¶ 13).   The plaintiff further alleges that defendant Taylor then started spraying the plaintiff in the face with a chemical agent. The plaintiff further alleges that Taylor said, "Does it hurt, does it hurt, yeah!" and "You ain't tough now."   (*Id.*, ¶ 14).   The defendants then left the pod, leaving the plaintiff in his cell.   (*Id.*, ¶ 15).

The plaintiff further alleges that, about 15 minutes later, Officer Blake returned to the pod with a video camera, along with defendants Taylor and Bragg and Sgt. Legg, and they asked the plaintiff if he would cuff up and come out of his cell, which he did.   (*Id.*, ¶

16).   The plaintiff was then taken to be decontaminated.   (*Id.*, ¶ 17).   After another 15 minutes, defendant Bragg and Sgt. Legg escorted the plaintiff to the shower.   (*Id.*,¶ 18).

The plaintiff further alleges:

20.   Bragg went to the shower stall while the plaintiff was taking a shower.   Plaintiff told Bragg that his penis and testicles felt like they were on fire.   Bragg said, "let me see where, show me." Plaintiff said "hell no" and "that is some gay shit."   Bragg started laughing and said "well your [sic; you're] the one that said your dick is on fire."   Plaintiff began shouting somebody get this dude away from me.

21.   Plaintiff was then taken from the shower to the rec yard without further incident.

22.   As a proximate result of the violent, unjustified, weapon and chemical agent attack and actions of Defendants Bragg and Taylor, and because the defendants kicked the food slot closed on plaintiff's hands, Plaintiff suffered serious physical injury including but not limited to:   Both hands possible broke[n]/fractured swelling of both hands, abrasions, bruises and severe pain to both hands and fingers.   Severe first degree skin burns in multiple places on his skin, burning of his eyes, loss of consciousness due to suffocation and choking lack of air, choking, coughing, gagging, dizziness, trouble breathing and a rash (Ex. 3-6)

23.   As a proximate result of the violent, unjustified, weapon, chemical agent, brutal physical act and attack, and actions of Defendants Bragg and Taylor.   Plaintiff also suffers severe emotional distress.

24.   Since these physical, weaponry, chemical attacks, and violent physical act[,] Plaintiff has multiple scars, red marks and places where rashes break out on his skin.   Plaintiff has also suffered significant injury to Plaintiff also believes he has broken/fractured bones in both hands and fingers and the depth of these injuries are yet to be determined.   Plaintiff also suffers from irritated, red and dry eyes.

(*Id.* at 14, ¶¶ 20-24).

The plaintiff's Complaint alleges that defendants Bragg and Taylor used force that was unnecessary, unreasonable, disproportionate, and for the purpose of maliciously

and sadistically causing harm to the plaintiff.  (*Id.* at 15, ¶ 27).  The plaintiff further asserts that their conduct was objectively unreasonable, excessive, and in violation of the plaintiff's clearly established rights under the Eighth and Fourteenth Amendments of which a reasonable correctional officer should have known.  (*Id.*, ¶¶ 28-29).

The plaintiff further alleges that, prior to March 16, 2014, defendants Ballard and Rubenstein had knowledge of the pervasive, long-standing and documented excessive use of force in the segregation units at MOCC, and failed to properly investigate, supervise and discipline the named defendants and other correctional officers who have engaged in such conduct.  (*Id.*, ¶ 33-34).  The plaintiff further alleges that the failure of the supervisory defendants to address the misconduct of their subordinates amounts to approval or tacit authorization of their conduct.  (*Id.*, ¶ 35).  The Complaint further specifically alleges that the MOCC administration, at the directive of defendant Ballard, have "declared 'Martial Law' on the plaintiff and inmates in the isolation units or 'Seg.'" (*Id.* at 2, "Introduction").  Additional details concerning these allegations will be discussed *infra*.

## STANDARD OF REVIEW

The defendants' motion asserts that the plaintiff's Complaint fails to state a claim upon which relief can be granted against defendants Ballard and Rubenstein (hereinafter "the Supervisory Defendants").  In *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true, and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."  While

the complaint need not assert "detailed factual allegations," it must contain "more than

labels and conclusions" or a "formulaic recitation of the elements of a cause of action."

*Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*,

556 U.S. 662 (2009), a civil rights case.   The Court wrote:

> Two working principles underlie our decision in *Twombly*.  First, the
> tenet that a court must accept as true all of the allegations contained in a
> complaint is inapplicable to legal conclusions.   Threadbare recitals of the
> elements of a cause of action, supported by mere conclusory statements, do
> not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the
> purposes of a motion to dismiss we must take all of the factual allegations
> in the complaint as true, we "are not bound to accept as true a legal
> conclusion couched as a factual allegation" (internal quotation marks
> omitted).   Rule 8 . . . does not unlock the doors of discovery for a plaintiff
> armed with nothing more than conclusions.   Second, only a complaint
> that states a plausible claim for relief survives a motion to dismiss.   *Id.*, at
> 556. * * *
>
> In keeping with these principles a court considering a motion to
> dismiss can choose to begin by identifying pleadings that, because they are
> no more than conclusions, are not entitled to the assumption of truth.
> While legal conclusions can provide the framework of a complaint, they
> must be supported by factual allegations.   When there are well-pleaded
> factual allegations, a court should assume their veracity and then
> determine whether they plausibly give rise to an entitlement to relief.

556 U.S. at 678-79.   "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct."   *Id.* at 678.

The Supervisory Defendants' motion will be reviewed under Rule 12(b)(6) of the

Federal Rules of Civil Procedure and the *Twombly/Iqbal* standard.   Furthermore, as

noted recently in *Haley v. Virginia Dep't of Health*, 4:12-cv-0016, 2012 WL 5494306, at

*2 n.2 (W.D. Va.   Nov. 13, 2012), "[t]he Fourth Circuit has not resolved whether a

motion to dismiss based on the Eleventh Amendment is properly considered pursuant to

Rule 12(b)(1) or Rule 12(b)(6) . . . The recent trend, however, appears to treat Eleventh Amendment immunity motions under Rule 12(b)(1) [which provides for the dismissal of claims over which the court lacks subject matter jurisdiction]."

## ANALYSIS

### A.     Official capacity claims.

The Supervisory Defendants' Motion to Dismiss (ECF No. 18) and Memorandum of Law (ECF No. 19) assert that, to the extent that the plaintiff has brought claims against them in their official capacities, any claims for monetary damages cannot survive because, neither a state, nor its officials acting in their official capacities, are "persons" under the civil rights statutes.   In *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court stated:

> Obviously, state officials literally are persons.  But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.   As such, it is no different from a suit against the State itself.  We see no reason to adopt a different rule in the present context, particularly when such a rule would allow petitioner to circumvent congressional intent by a mere pleading device.

> We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.  The judgment of the Michigan Supreme Court is affirmed.   [Citations omitted].

Furthermore, pursuant to the Eleventh Amendment to the United States Constitution, the power of the federal judiciary does not extend to suits by a citizen of one state against another, or to suits by a citizen against his or her own state.   *Hans v. Louisiana*, 134 U.S. 1, 9 (1980).   Thus, the Eleventh Amendment of the United States Constitution bars a suit in a federal court by private parties seeking to impose monetary liability upon a State or State officials, which may be paid from public funds in the state

treasury.  *Quern v. Jordan*, 440 U.S. 332, 337 (1979).  Absent consent, federal suits against a state by a citizen of that state or another state are prohibited by the Eleventh Amendment.  *Kentucky v. Graham*, 473 U.S. 159, 199 (1985); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99-100 (1984).  The Eleventh Amendment, however, permits a federal court to enjoin state officials to conform their future conduct to federal law, which is distinguishable from a retroactive monetary award paid from State funds.  *Id.* at 337.  Thus, the undersigned proposes that the presiding District Judge **FIND** that the DOC Defendants are immune from liability for monetary damages in their official capacities under the Eleventh Amendment and, accordingly, such claims must be dismissed.

> **B.    Individual capacity claims.**

The seminal issue in this case is whether the defendants' conduct violated the plaintiff's right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment of the United States Constitution.   In *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"  This is a low standard.  The Supreme Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'" *Id.* at 833.

In *Hudson v. McMillan*, 503 U.S. 1 (1992), the Supreme Court held that use of excessive physical force against an inmate may constitute cruel and unusual punishment even when the inmate does not suffer serious injury.  The Court held "that whenever

prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley* [*v. Albers*, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."   503 U.S. at 6.   The *Whitley* Court noted that:

> [I]n making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison staff, in addition to the possible harms to inmates against whom force might be used.

475 U.S. at 320.   The Supreme Court has further emphasized that, "prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."   *Id.* at 321-22 (quoting *Bell v. Wolfish*, 441 U.S. at 547).   Thus, the Court stated that "[u]nless it appears that the evidence viewed in the light most favorable to the plaintiff will support a reliable inference of wantonness in the infliction of pain, under the standard we have described, the case should not go to the jury."   *Id.* at 322.

In *Whitley*, the Court set forth the following five factors that must be weighed in determining whether force was applied in a good faith effort to maintain or restore order, or whether it was done so maliciously and sadistically for the very purpose of causing harm:   (1) the need for application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury; (4) the threat reasonably perceived by the responsible official; and (5) any efforts made to temper the severity of a forceful response.   *Whitley*, 475 U.S. at 321; *Williams v. Benjamin*, 77 F.3d 756, 762 (4th

8

Cir. 1996).   (ECF No. 104 at 13).   This is clearly-established law of which a reasonable correctional officer or prison administrator would know, and is the measure by which the conduct of the officers alleged to have used force against the plaintiff will be judged.

In *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994), the Court held that supervisors may be liable for the actions of their subordinates where the supervisor, by his own conduct, was deliberately indifferent to, or tacitly authorized or approved, prior constitutional violations.   Such liability is not based on *respondeat superior*, but rather upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care."   13 F.3d at 798 (*quoting Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984)).   In *Shaw*, the Fourth Circuit discussed the following elements necessary to establish a supervisor's liability under 42 U.S.C. § 1983:

1)      The supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;

2)      The supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices," and

3)      There was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injuries suffered by the plaintiff.

13 F.3d at 799.   However, in *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court clarified that a prison official's "actual subjective awareness" of an excessive risk of harm or safety was required to hold the official liable under the Eighth Amendment.

9

Thus, a prison official cannot be held liable for the failure to alleviate a risk that he should have perceived, but did not in fact perceive.  *Id.* at 838.

The Supervisory Defendants' Memorandum of Law asserts that the plaintiff has not alleged, and cannot establish, that either of these supervisors had actual knowledge of "a pervasive and unreasonable risk" of constitutional injury to the plaintiff. (*Id.*)  The Supervisory Defendants further assert that, while the second element concerning "deliberate indifference or tacit authorization of the alleged offensive practices" may be demonstrated by "continued inaction in the face of documented widespread abuses," *Shaw*, 13 F.3d at 799, the plaintiff herein has pled only conclusory allegations that amount to no more than a recital of the legal elements of a supervisory liability claim. (*Id.* at 7-8).

However, the plaintiff's Complaint specifically alleges as follows:

> The Respondents and the MOCC administration has [sic; have] declared "Martial Law" on the Plaintiff and inmates in the isolation units or "Seg."  Respondents' declaration of "martial law" and directive not to make "efforts to temper" violate Plaintiff's constitutional rights.

> The Routine use of unconstitutional force against Plaintiff and all inmates in the isolation units appears to be based on Respondents' declaration of "Martial Law."  At MOCC, "martial law" appears to mean that officers on the isolation units may use chemical agents, all other weapons, and restraints without regard to DOC policy or constitutional standards regarding the use of force.   The directive to implement martial law was given by Respondent Ballard.

> The Plaintiff and other similar situated inmates are being subjected to routine physical abuse through the use of excessive force, the use of chemical weapons, grenades, pellet guns, and other weapons in violation of Respondent's own policies.  As established per Respondent's own documents, officers working on the isolation units have been directed by MOCC administration to ignore Plaintiff's and inmates constitutional rights and use severe methods of force to assert control over the inmates housed on solitary confinement.  As a result, officers are routinely using

force against inmates who are locked alone in their isolation cells, or who are otherwise physically restrained, and who do not pose an imminent or present danger of harm to others, themselves or state property.   Not only does this routine use of force violate clearly established law, it creates a culture of fear and violence that has resulted in extremely dangerous conditions for both the inmates in solitary confinement and the officers assigned to guard them.

Respondents' practice of using excessive force against isolation inmates (Plaintiff) is confirmed by an internal email disclosing that the MOCC administration has instructed officers on the isolation units that they do not have to make "efforts to temper" the severity of the force used against inmates, in direct violation of the Eighth Amendment and the United States Supreme Court case law.   The email setting forth "protocol" that "no efforts to temper" are required on the isolation or "seg" units was written by Major Robert Rhodes and carbon copied to Respondent Ballard, establishing his knowledge and approval of this unconstitutional directive. Furthermore, Defendants Ballard and Commissioner Rubenstein both affirmed a response to a grievance in which a captain wrote that "being on a control unit, efforts to temper are not needed or required."

(ECF No. 2 at 9).

In *Shaw v. Stroud,* the Fourth Circuit held that "liability is ultimately determined by pinpointing the person/persons in the decision making chain whose deliberate indifference permitted the constitutional abuses to continue unchecked."   13 F.3d at 799.   Taking the plaintiff's allegations as true, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has alleged specific facts that would allow the court to draw a reasonable inference that the conduct of defendants Ballard and Rubenstein violated the plaintiff's constitutional rights through the promulgation, implementation and/or continued enforcement of a policy or procedure that exposes inmates to excessive and unnecessary uses of force when such use of force was not justified under the circumstances, and was for malicious or sadistic purposes, rather than simply to restore order.

11

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the allegations in the Complaint concerning the use of force against the plaintiff state plausible claims of violations of his rights under the Eighth Amendment of the United States Constitution, and those allegations further sufficiently support claims of supervisory liability against defendants Rubenstein and Ballard on that basis. Furthermore, the undersigned proposes that the presiding District Judge **FIND** that, based upon those allegations, it is premature to make a finding of whether Ballard and Rubenstein are entitled to qualified immunity, and that the parties should be permitted to engage in discovery and further proceedings on those issues.

## RECOMMENDATION

Based upon the proposed findings contained herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the Motion to Dismiss filed by defendants Ballard and Rubenstein (ECF No. 18) with respect to the plaintiff's claims for monetary damages against all of those defendants in their official capacities. It is further respectfully **RECOMMENDED** that the presiding District Judge otherwise **DENY** that Motion to Dismiss. It is further respectfully **RECOMMENDED** that the presiding District Judge leave this matter referred to the undersigned Magistrate Judge for additional proceedings concerning the plaintiff's remaining claims.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the

date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties and Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

July 21, 2015

Dwane L. Tinsley
United States Magistrate Judge

13